## Thomas H. Bissell *vs.* Josephine L. Dickerson.

First Judicial District, Hartford, January Term, 1894. Andrews, C. J.,
   Carpenter, Torrance, Fenn and Baldwin, Js.

Under the provisions of the Act of 1762, as to granting new trials by the
   Superior and County Courts, (which with no substantial change except
   an extension of the right to District and City Courts, are still in force
   and constitute § 1125 of the General Statutes,) the words in the statute,
   "for other reasonable causes," authorized the courts therein named to
   grant new trials for verdicts against evidence.

This power was withdrawn by a provision enacted in 1821, which consti-
   tuted § 1127 of the General Statutes.

Chapter LI of the Public Acts of 1893, respecting new trials for verdicts
   against evidence, in effect repealed § 1127, substituting provisions radi-
   cally different, and gives either party in any cause tried to a jury the
   right to have the case reviewed after judgment by the Supreme Court
   of Errors, notwithstanding the verdict in the opinion of the trial court
   is in accord with the evidence. The effect of this legislation is to re-
   move the restriction imposed in 1821 upon the power formerly possessed
   by trial courts, under § 1125 of the General Statutes, to grant new trials
   after verdict and before judgment, in cases where, in the opinion of
   such court, the verdict is against the evidence; and to restore the law
   upon that subject as it existed prior to 1821.

A repeal of a statute by implication is not favored, and will never be pre-
   sumed where both the new and the old statute may well stand together.

The question whether a verdict should be set aside as against the evidence
   in the cause, cannot be brought before the Supreme Court of Errors
   on a reservation for advice. In cases where this court has power to
   grant a new trial on that ground, it acts directly, by its own mandate,
   and not by advice to the court below as to what action should be taken
   there.

The indorsee of a negotiable accommodation note who received the same
   in good faith before maturity for value and without notice of any in-
   firmity is entitled, in an action thereon against the maker, to recover
   the face of the note with interest, notwithstanding such note was ob-
   tained from the maker by the fraud of the payee and indorser, and the
   plaintiff paid less than its face value.

[Argued January 4th—decided February 19th, 1894.]

Action by the indorsee against the maker of a negotiable
note to recover $100, the amount thereof; brought to the
City Court of Hartford and tried to the jury before *Mc-
Manus, J.;* verdict for plaintiff for $25.00, only, and appeal by

the plaintiff for an alleged error in the charge of the court. *Error, and new trial granted.*

The defendant, in her defense, claimed and offered evidence to prove that the note in question was an accommodation note executed by her for the benefit of the payee, and was obtained by the latter by misrepresentation and fraud, of which the plaintiff had knowledge before he purchased the note. The plaintiff claimed and offered evidence to prove that he bought the note in good faith, before maturity without notice of any infirmity and paid not less than $80.00 for it.

The plaintiff requested the court to charge the jury that if they should find that the plaintiff was a *bonâ fide* purchaser of the note without notice of any fraud or infirmity in its inception at the time he took it, he was entitled to recover the face value of the note, with interest from its maturity, whether the note, as between the maker and the payee, was fraudulent or not. The court did not charge as requested, but instructed the jury that if they should find a verdict for the plaintiff it should be for such amount as he paid for the note.

The trial court accepted the verdict and upon oral motion of plaintiff's counsel for a new trial for a verdict against evidence, caused the evidence to be made part of the record and certified that in the opinion of the court the jury were not justified by the evidence in rendering a verdict for the plaintiff for less than eighty dollars. A rule to show cause why a new trial should not be granted for a verdict against evidence was allowed and the questions arising thereon were reserved for the advice of this court.

*Cooke Lounsbury,* for the appellant (plaintiff).

I. The court erred in instructing the jury as to the amount the plaintiff was entitled to recover in case the verdict should be in his favor. This court has made no distinction in this respect between an accommodation note or note without consideration, and one obtained by fraud; but has treated both as valid for their face value, in the hands of a *bonâ fide* indorsee. And there seems to be no distinction in principle

*Lawrence* v. *Stonington Bank,* 6 Conn., 521; *Brush* v. *Scribner,* 11 id., 388; *Belden* v. *Lamb,* 17 id., 453; *Roe* v. *Jerome,* 18 id., 155; *Middletown Bank* v. *Jerome,* 18 id., 443; *Van Windisch* v. *Klaus,* 46 id., 433.

Though, in other states, the authorities on this question of the amount to be recovered by a *bonâ fide* holder are somewhat conflicting, we think the weight of authority is decidedly in favor of a full recovery. And even in those states which hold the contrary the authorities are by no means uniform. *Judd* v. *Seaver,* 8 Paige, 548; *Putnam* v. *Sullivan,* 4 Mass., 45–54; *Peacock* v. *Rhodes,* 2 Douglass, 633; *Vinton* v. *Peck,* 14 Mich., 296; *Bailey* v. *Smith,* 14 Ohio State, 396; *Mathews* v. *Rutherford,* 7 La. An., 225; *Lay* v. *Wissman,* 36 Iowa, 305; *Daniels* v. *Wilson,* 21 Minn., 530; *Moore* v. *Baird,* 30 Penn. State, 138; *Gaul* v. *Willis,* 26 id., 259; *Dunn* v. *Ghost,* 5° Colo., 139; *U. S.* v. *Dunn,* 6 Peters, 59; *Cromwell* v. *County of Sac,* 96 U. S. (6 Otto), 60; *R. R. Companies* v. *Schutte,* 103 U. S. (13 Otto), 118–145; Daniels on Negotiable Instruments, §§ 756–769a and notes; 3 Parsons on Contracts, 146–148.

II. The testimony of the plaintiff that he paid $90.00 or thereabouts, certainly more than $80.00 for the note, was uncontradicted. This fact therefore must be taken as proved.

The verdict was, therefore, clearly against the evidence, and contrary to the instructions of the court, and a new trial should be granted on that ground.

*Sidney E. Clarke,* for the appellee (defendant).

The authorities are at variance concerning the rule relating to the amount of recovery upon a note issued without consideration. While some few of the courts maintain the doctrine that a *bonâ fide* holder for value may recover the full amount, the better authority seems to be that when a note is obtained by fraud or without consideration the amount of recovery is measured by the actual amount paid, with interest. The English decisions are uniform in maintaining this rule, and the courts of Massachusetts, following the common law, have always maintained the rule as contended

by the appellee, and as the court below instructed the jury. *Babson* v. *Webber*, 9 Pick., 165; *Parish* v. *Stone*, 14 Pick., 208; *Chicopee Bank* v. *Chapin*, 8 Met., 44; *Stoddard* v. *Kimball*, 4 Cushing, 604; *Stoddard* v. *Kimball*, 6 id., 469; *Hubbard* v. *Chapin*, 2 Allen, 328; *Newton* v. *Baker*, 125 Mass., 30. The courts of New York have established the same doctrine. *Harger* v. *Wilson*, 63 Barbour, 237; *Todd* v. *Shelbourne*, 15 New York (8 Hun), 512; *Williams* v. *Smith*, 2 Hill, 301; *Moore* v. *Ryder*, 65 New York, 439; *Brown* v. *Mott*, 7 Johnson, 361; *Clarke* v. *Sisson*, 22 New York, 312. This rule also prevails in a number of other states.

BALDWIN, J.　This case comes before us on a reservation for our advice, as to the granting of a new trial on the ground that the verdict was against the evidence; and also on an appeal by the plaintiff, assigning error in the charge to the jury.

The advice to be given depends on the construction and effect of chapter LI of the Public Acts of 1893, and involves a consideration of the question whether, since its enactment, trial courts have power, as at common law, to set aside verdicts which, in their opinion, are manifestly against the weight of evidence.

Such a power was given as early as 1644 to the "particular court" of the Colony, then the ordinary tribunal for the trial of civil causes. In the first Revision of our Colonial Statutes, the "Code of 1650," it is vested in the particular court in the following terms: "And it is further ordered, that the Courte of Magistrates shall haue libbertye (if they doe not find in their judgments, the Jury to haue attended the euidence giuen in, and true issue of the case, in theire verdict,) to cause them to returne to a second consideration thereof; and if they still persist in theire former opinion, to the dissatisfaction of the Courte, it shall be in the power of the Courte to impannell another jurye, and committ the consideration of the case to them." 1 Colonial Records of Connecticut, 536.

In 1666, the year after the grant of the charter, the Colony was divided into counties, each of which was supplied with a County Court, invested with substantially the same powers,

in ordinary civil causes, as those formerly enjoyed by the "particular Court." A "Court of Assistants" was also created, with jurisdiction, among other things, of appeals from the County Courts.

In 1694 the right of trial courts to set aside verdicts, as contrary to the weight of evidence, was taken away. In lieu of this, two remedies were provided, by appeal and by what was called a "review." Any party against whom a verdict was rendered could, notwithstanding judgment was entered upon it, review it by a new "process" in the same court, where the cause was thereupon tried *de novo*, before another jury. This system, as set out in the Revision of 1702 (p. 3), gave an appeal from any judgment of the County Court to the Court of Assistants, or at the election of the party, a review. If either party was dissatisfied with the judgment on such a review, he could appeal to the next Court of Assistants, where the matter was to be finally disposed of. If on an appeal to the Court of Assistants taken from a judgment of the County Court rendered upon a first trial, either party was dissatisfied with the result, he could review it by a new process in the appellate court. In 1709, by "An Act for Restraining the liberty of Three Tryals, in some Actions and Cases," these provisions were so modified that whenever there were two trials in the same court with the same result, the second judgment should end the case forever; but "in all Actions and Causes wherein the Plaintiff upon the First Trial by the Bench and Jury, shall recover judgment, and the defendant upon the Second Trial, by the Bench and Jury shall recover Judgment, there shall be Liberty of another or Third Trial, by Appeal or Review, as formerly." Session Laws of 1709, p. 150.

The power of the court, if dissatisfied with a verdict, to send the jury back for a further consideration, was stated in the Revision of 1702 (p. 3), in the form which is still retained in General Statutes, § 1104.

In 1762 a statute was passed which worked important changes in our methods of judicial procedure. The General Assembly made over its jurisdiction as to granting new trials,

in ordinary cases, to the Superior and County Courts respectively, and the process of review was abolished. Statutes, Ed. 1769, p. 307. The provisions of this Act, as to new trials, with no substantial change of terms except an extension of the right of granting them to District and City Courts, are still in force, and are thus given in the General Statutes :— "Section 1125. The Superior Court, Court of Common Pleas, District Court, and any City Court, may grant new trials of causes that may come before them respectively, for mispleading; the discovery of new evidence; want of actual notice of the suit to any defendant, or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed; or other reasonable cause, according to the usual rules in such cases."

This statute, when originally passed, had the effect of greatly restricting the remedy of a new trial. Previously it could be demanded as an absolute right by any party, plaintiff or defendant, who was dissatisfied with the verdict. Henceforth a new trial could be had only when the court was dissatisfied with the verdict, and for a cause recognized as sufficient at common law.

The construction of the Act, as respects the particular subject of verdicts against evidence, was first brought under discussion in this court in 1816. The losing party in a case in the Superior Court had filed a motion for a new trial on the ground that the verdict was against the evidence, and that court, thereupon, without stating what the evidence was, had simply reserved for the opinion of this court the question whether it (the trial court) had the legal power to grant the motion. At that time, under the general rules of practice adopted in 1807, (3 Day, 28,) the Superior Court could either dispose finally of motions for a new trial, or, at its discretion, reserve them for the opinion of this court. The opinion in the case was delivered by Chief Justice SWIFT, and affirmed the right of the Superior Court to grant the motion. It states the law on the point under examination in these terms :—" To all courts acting on the principles of the common law the power is incidental to grant new trials for vari

ous causes, among which one is, that the verdict was against evidence. This has ever been done in *England*, as well as in sundry states in the Union. Courts in this state, then, acting according to the common law, have this power, unless prohibited by positive law. The statute respecting this subject authorizes courts to grant new trials, 'for mispleading, discovery of new evidence, or other reasonable cause, according to the common and usual rules and methods in such cases.' This is so far from being a prohibition, it may be considered as conferring a power to grant new trials where the verdict is against evidence; for this comes clearly within the expression, 'for reasonable cause, according to the common rules.' It would seem clear, both by the common and statute law, our courts possess this power.

"It has been supposed from the power of the court to return the jury to a second and third consideration, the necessary implication is, that they shall have no further control of the verdict; and that in those countries where new trials are granted on the ground that the verdict is against evidence, the courts have no such power. But there is no inconsistency or impropriety in the exercise of both these powers; and it may often happen that a new trial is rendered unnecessary by returning the jury to a further consideration where the verdict is wrong." *Bartholomew* v. *Clark*, 1 Conn., 472, 480.

In the revision of 1821 a special provision was introduced as to the remedy for verdicts against evidence rendered in the Superior Court, which was designed, as stated by the revisers (Revision of 1821, p. 54, note), to confirm and modify the practice sanctioned in *Bartholomew* v. *Clark*. This statute, while leaving the powers of the County Court unaffected, authorized the Superior Court, if of opinion that a verdict was against evidence, to report a statement of the evidence to this court, which could thereupon, if of the same opinion, grant a new trial. There was an absolute right of appeal in most cases from judgments of the County Court to the Superior Court, so that if a verdict were set aside without due cause by the former, and a contrary verdict afterwards ren-

dered in the cause, the losing party could secure a new trial in the latter tribunal.

No change was made in this law until after the County Courts had been replaced by Courts of Common Pleas, when, in the Revision of 1875, (p. 448,) it was made applicable alike to the Superior Court, Court of Common Pleas, District Court and City Courts, and the power to grant the new trial was given in each case, to such court as would have jurisdiction of a writ of error from a judgment rendered on the verdict. In this form it appeared as § 1127 of the Revision of 1888, which read as follows:—" Sec. 1127. When either of said courts shall be of opinion that the verdict of the jury is against the evidence in the cause, it may, at its discretion, report a statement of such evidence to the next court having jurisdiction of writs of error from its judgments, and if such court shall be of opinion that the verdict is against such evidence, it may, at its discretion, grant a new trial."

The construction placed by the profession on this statute has always been that though permissive in its terms, it was mandatory in effect, and so far modified § 1125 as to withdraw from the trial court any power to set aside a verdict as against evidence. If the court of original jurisdiction was satisfied with the verdict, it accepted it, and ordered it recorded and judgment entered in ordinary course. 2 Swift's System, 260. If dissatisfied, it could order it recorded, render or stay judgment at its discretion, and report the evidence to the appellate court; which could thereupon, if of the same opinion, grant a new trial. No motion for a new trial was addressed to the trial court, for that court had no power to grant one. Ordinarily such a motion was filed in the trial court, but made to the appellate court. There was no reservation of such matter for the advice of this court. It came here for direct action, and the new trial, if obtained, was not advised but ordered. *Zaleski* v. *Clark*, 45 Conn., 405, note.

The Act of 1893, upon which the decision of the question before us depends, is entitled " An Act concerning New Trials of Civil Actions," and reads as follows: " Section 1127 of the General Statutes is hereby amended to read as follows: Upon

the trial of any cause in either of said courts before a jury, either party may, within six days after judgment therein, file a written motion for a new trial upon the ground that the verdict is against the evidence in the cause, and the court shall thereupon report such evidence to the Supreme Court of Errors and make it a part of the record; and, if such court shall be of opinion that the verdict was against such evidence, it shall grant a new trial." Public Acts of 1893, p. 228, Chap. LI.

The effect of this legislation is virtually to repeal § 1127, and substitute a new section in its place containing provisions radically different. A new trial could be obtained under the old law only if the trial court was dissatisfied with the verdict. The new law gives the right to seek it, at the hands of this court, although the verdict was a proper one, in the opinion of the trial court. The old law allowed but did not require the trial court, if it were of opinion that the verdict should be set aside, to report the evidence. The new law requires it to do so, even if it be of a contrary opinion, should such a report be demanded by the losing party. The old law allowed the court, of its own motion, or on an oral motion, to send up the cause to this court, for its decision before entering judgment. *Tomlinson* v. *Town of Derby*, 41 Conn., 268, 269. The new law allows it only upon a written motion, filed by the party after judgment has been rendered against him on the verdict. The old law gave power to this court, even were it of opinion that the verdict was against evidence, to refuse a new trial, at its discretion. The new law, in such a case, requires us to grant the motion.

The City Court, in the present case, without any written motion by the plaintiff, granted a rule to show cause why a new trial should not be granted for a verdict against evidence, and reserved the questions arising thereon for the advice of this court. It has also reported a statement of the evidence, and certified that in its opinion the verdict is against the evidence.

This mode of proceeding was not warranted by General Statutes, § 1127, for that section (as it stood in the Revision of 1888) was, as we have seen, repealed before the trial in

the City Court. It is not warranted by the terms of § 1127 as reconstituted by the Act of 1893, for it is not predicated on a written motion by the losing party. It does not conform to the provisions of either statute, since it is merely a reservation for the advice of this court, as to what action the City Court should take; not a transmission of a record upon which this court is itself to render judgment.

The City Court has, however, the same power as the Superior Court as to reserving questions of law for the advice of this court, (VII Special Laws, p. 867, § 2); and the same question of law arises upon the record now before us, which arose upon that in *Bartholomew* v. *Clark*, 1 Conn., 472. In this case, as in that, the trial court was of opinion that the verdict ought to be set aside, but did not feel assured as to its own power to take such action. The same statutes, in substance, which then existed respecting verdicts against evidence, and which were there held to authorize the trial court, on its own responsibility, to set aside such a verdict, are still in force. (General Statutes, § 1104; Statutes, Revision of 1808, p. 36, § 11; General Statutes, § 1125; Statutes, Revision of 1808, p. 37, § 13.) Unless, then, the Act of 1893 has the same effect in this regard as the statute which it replaced, so as again to withdraw this power, the decision in *Bartholomew* v. *Clark*, which was reached after hearing very full and able arguments on each side from leading counsel, must govern the advice we are to give.

Statutes are to be expounded in view of the mischief to remedy which they were enacted. *French* v. *Gray*, 2 Conn., 119. The principal mischief which the Act of 1893 had in view evidently was that a verdict might be returned which was palpably against the evidence, and yet the trial court take a different view of it and decline to report the evidence for the consideration of this court. There is nothing in the statute which professes to withdraw from the trial court any power to set aside verdicts which it might otherwise possess. Section 1125 of the General Statutes would have given all City Courts power to set aside verdicts against evidence, had it not been restricted, and, by a plain implication, repealed

*pro tanto*, as respects this class of cases, by § 1127. The latter section is now itself repealed, and the original powers given by § 1125 are no longer restricted, unless it be by the force of the new statute by which § 1127 has been replaced. 1 Swift's Dig., 13.

This statute contains no words of repeal, and if it has such an effect, it must be derived by implication. Repeals by implication are not favored, and will never be presumed, where both the new and the old statute may well stand together. *Windham County Savings Bank* v. *Hines*, 55 Conn., 433, 435; *Kallahan* v. *Osborne*, 37 Conn., 488. If both § 1125 and § 1127 in its new form can have full effect, it is our duty to give them such a construction as will secure that result. *Goodman* v. *Jewett*, 24 Conn., 588, 589; *Middletown* v. *New York, New Haven & Hartford R. R. Co.*, 62 Conn., 492, 498.

Under the Act of 1893, resort can be had to this court only after judgment has been entered on the verdict in the court below; for it is given only upon the written motion of the party, filed "within six days after judgment therein." Such a judgment *primâ facie* indicates that the court approves the verdict. While under our practice, accepting a verdict and ordering that it be recorded do not necessarily imply that it was acceptable to the court, such an inference may naturally be drawn in the absence of any statement in the record to the contrary, from the rendition of a judgment upon it. A judgment upon a verdict is, as fully as any other, the result of judicial action, and it may be entered or not, at the discretion of the court, pending a motion for a new trial. *Collins* v. *Prentice*, 15 Conn., 423, 426; *Tomlinson* v. *Town of Derby*, 41 Conn., 268.

The Act of 1893, therefore, may well be understood as referring only to cases where the trial court is satisfied with the verdict, and as dealing only with motions for a new trial which are made or addressed to the Supreme Court of Errors. This construction leaves to be regulated by § 1125 or by the common law of which it is declaratory, the granting of a new trial where the trial court deems the verdict against evidence, and instead of rendering judgment upon it, sets it

aside. It is also the only mode of construction that is in harmony with the general rule of judicial procedure, that questions of a discretionary nature are always to be acted upon, in the first instance at least, by the trial court. If, in the exercise of its discretion, a verdict is set aside as against evidence, under the provisions of § 1125, the injustice which would otherwise have been done by the action of the jury is fully and promptly remedied. If, on the other hand, both judge and jury concur in erroneous conclusions from the evidence in the cause, the new statute gives a new remedy in this court, but still one which follows and rests upon the exercise of a judicial discretion on the part of the court below.

Many years since, it was said by this court, with reference to setting aside verdicts against evidence, when the trial court was satisfied with the action of the jury : " The practice of allowing, as a matter of course, cases to go up for review on this ground would be attended with much vexation in increasing the amount of litigation, besides the practical difficulty which is always felt in reviewing a question of fact upon a mere statement of the evidence on paper, without an opportunity to judge of the credit due to witnesses from their appearance upon the stand." *Reboul* v. *Chalker*, 27 Conn., 114, 129. The legislature has now determined, by the Act of 1893, that it is better to encounter these inconveniences than to let what this court might consider an unjust verdict stand, although the trial court should think that it ought not to be disturbed. But we cannot think that it was intended to require a party in whose favor the trial court is ready to set aside a verdict, to bring the case here for a further opinion to the same effect, from a court which, as remarked in *Reboul* v. *Chalker*, *supra*, is necessarily less fitted to weigh the testimony, because unacquainted with the bearing and demeanor of the witnesses at the trial, and the manner in which they respond to the questions asked. That the General Assembly by which the statute in question was passed was fully sensible of the force of these considerations is apparent from another enactment of the same session, Public Acts of 1893, p. 319, chapter CLXXIV., § 9, in

which it is provided that, while this court may, upon a statement of the evidence, upon which any finding of fact by a trial court is based, reverse such finding, it can be done only when such finding is adjudged to be " clearly against the weight of evidence." It is hardly to be presumed that a legislature, justly reposing such confidence in the conclusions of the court that saw and heard the witnesses, would in another statute, but a few weeks later in date have taken so different a view as to deny any force to the opinion of the trial court that a verdict was against evidence, particularly when such denial would tend directly to a large increase in the judicial expense of the State, since a long record must be made up and printed, at its cost, in each case within the operation of the statute now in question.

The city court is therefore advised that it has the legal power to grant a new trial in the case at bar.

It was, of course, unnecessary for that court to report to us a statement of the evidence. Whether a verdict should be set aside, as against evidence, is a question addressed to the discretion of the court, and rests on mere considerations of fact. Whether a trial court has the right to set aside a verdict, which it deems to be against evidence, is a question of law, and is the only question properly before us on this reservation.

The plaintiff's appeal is based on the instruction given to the jury, that in the action against the maker of a negotiable accommodation note by an indorsee, who took it in good faith for value before maturity, and without notice of any infirmity, if the defendant proves that it was obtained from him by the payee and indorser by fraud, the rule of damages is the amount paid by the plaintiff. A note given for the accommodation of the payee, which he has thus negotiated to a *bonâ fide* purchaser, stands, as between the holder and maker, on the same footing as if it were business paper. The jury should therefore have been instructed that the rule of damages under the circumstances stated in the charge, was the face of the note, with interest from its maturity. *Belden* v. *Lamb*, 17 Conn., 441, 453; *First Ecclesiastical Society* v.

*Loomis*, 42 Conn., 570, 574; *Rowland* v. *Fowler*, 47 Conn., 347 ; *Cromwell* v. *County of Sac*, 96 U. S., 51, 60.

There is error, and a new trial is ordered upon the plaintiff's appeal, in case one should not be granted by the City Court, on the ground that the verdict was against the evidence.

In this opinion the other judges concurred; except CAR-PENTER, J., who dissented as to so much of the opinion as held that the City Court had power to grant new trials for verdicts against evidence.